UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CHARTER COMMUNICATIONS, INC., *et al.*,<br><br>     Debtors. | Chapter 11<br>Case No. 09-11435 (JMP) |
| IRON WORKERS LOCAL NO. 25<br>PENSION FUND, *et al.*,<br>     Appellants,<br>v.<br><br>CHARTER COMMUNICATIONS, INC. *et al.*,<br><br>     Appellees. | Case Nos. 10-CV-0929 (GBD)<br>     10-CV-0930 (GBD)<br><br><br><br>(Electronically Filed) |

---

**BRIEF OF APPELLANTS**
**(Case No. 10-cv-02929(GBD))**

---

GENOVESE JOBLOVE & BATTISTA, P.A.
John H. Genovese, Esq.
Robert F. Elgidely, Esq.
100 S.E. 2nd Street, Suite 4400
Miami, FL 33131
Telephone: (305) 349-2300
Telecopier: (305) 349-2310

ROBBINS GELLER RUDMAN & DOWD LLP
Stuart A. Davidson, Esq.
Cullin A. O'Brien, Esq.
David J. George, Esq.
Robert J. Robbins, Esq.
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Telecopier: (561) 750-3364
*Attorneys for Appellants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

BASIS FOR APPELLATE JURISDICTION ...................................................................... 3

STATEMENT OF ISSUE ON APPEAL............................................................................. 3

STANDARD OF APPELLATE REVIEW........................................................................... 4

STATEMENT OF THE CASE............................................................................................ 4

STATEMENT OF FACTS .................................................................................................. 6

ARGUMENT........................................................................................................................ 12

THE BANKRUPTCY COURT ERRED IN ENTERING THE
RECONSIDERATION ORDER TO THE EXTENT THE
RELEASE OF SECURITIES LAW VIOLATIONS
UNLAWFULLY EXTINGUISHED APPELLANTS'
SECURITIES FRAUD LITIGATION AGAINST CCI'S
OFFICERS AND DIRECTORS CONTRARY TO
BANKRUPTCY CODE SECTION 523(A)(19), IMPORTANT
PUBLIC POLICIES EMBODIED THEREIN, AND JUDICIAL
PRECEDENT. ....................................................................................................... 12

    A.    The Release of Securities Law Violations is prohibited by
        Bankruptcy Code Section 523(a)(19) ..................................... 12

    B.    The Release of Securities Law Violations is invalid because
        it contravenes judicial precedent and is not supported by
        sufficient factual findings and/or evidence. ............................ 16

CONCLUSION..................................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

**Page(s)**

*Cartalemi v. Karta Corp. (In re Karta Corp.),*
   342 B.R. 45 (S.D.N.Y. 2006)...................................................................................................22

*Citibank, N.A. v. Vebeliunas,*
   332 F.3d 85 (2d Cir. 2003).........................................................................................................4

*Deutsche Bank AG v. Metromedia Fiber Network, Inc.*
   *(In re Metromedia Fiber Network, Inc.),*
   416 F.3d 136 (2d Cir. 2005).....................................................................................................17

*In re Adelphia Communications Corp.,*
  368 B.R. 140 (Bankr. S.D.N.Y. 2007)......................................................................................20

*In re Johns-Manville Corp.,*
   340 B.R. 49 (S.D.N.Y. 2006).....................................................................................................4

*In re Specialty Equipment Companies, Inc.,*
  3 F.3d 1043 (7th Cir. 1993) ......................................................................................................21

*Louise M. Smith, IRA v. Gibbons (In re Gibbons),*
   289 B.R. 588 (Bankr. S.D.N.Y. 2003), aff'd, 311 B.R. 402 (S.D.N.Y. 2004), *aff'd,*
   155 Fed. Appx. 534 (2d Cir. 2005)..........................................................................................12

*Oklahoma Department of Securities v. Mathews,*
   423 B.R. 684 (W.D. Okla. 2010) .............................................................................................14

*Rosenberg v. XO Communications, Inc. (In re XO Communications, Inc.),*
   330 B.R. 394 (Bankr. S.D.N.Y. 2005)......................................................................................23

*S.E.C. v. Drexel Burnham Lambert Group, Inc.*
   *(In re Drexel Burnham Lambert Group, Inc.),*
   960 F.2d 285, 293 (2d Cir. 1992).............................................................................................18

*S.E.C. v. Sherman,* 406 B.R. 883, 887 (C.D. Cal. 2009) ............................................................15

*Solow v. Kalikow (In re Kalikow),*
   602 F.3d 82, 91 (2d Cir. 2010)............................................................................................4, 17

**STATUTES**

11 U.S.C. § 105(a) ............................................................................................................17

11 U.S.C. § 523(a)(19) ......................................................................................................13

28 U.S.C. § 158(a)(1) ..........................................................................................................3

**RULES**

Fed. R. Bankr. P. 8013 ........................................................................................................4

## PRELIMINARY STATEMENT

Appellants Iron Workers Local No. 25 Pension Fund, Indiana Laborers' Pension Fund, and Iron Workers District Council of Western New York and Vicinity Pension Fund (the "Appellants") submit this brief in support of their appeal (the "Appeal") of the Order Denying Motion For Limited Rehearing, Limited Reconsideration, And/Or Limited Relief From Order Confirming Debtors' Joint Plan Of Reorganization (the "Reconsideration Order") entered by the Honorable James M. Peck, U.S.B.J. for the Southern District of New York, on January 26, 2010. Appellants' Appendix, at A671 - A672.[1]  Simultaneously herewith, Appellants are filing their brief in support of their appeal (the "Enforcement Appeal") of the Order Granting Motion to Enforce Plan Injunction (the "Enforcement Order") entered by Judge Peck on February 9, 2010. App., at A688.  In the interests of judicial economy, the Statement of Facts and Legal Arguments set forth in Appellants' Brief in support of the Enforcement Appeal, to the extent consistent with the relief sought herein, are incorporated herein.

In this Appeal, Appellants assert that the securities claims they asserted against a corporation's officers and directors in the Federal Securities Litigation (referenced below), filed in the United States District Court for the Eastern District of Arkansas (the "Arkansas District Court") should not have been involuntary extinguished in a corporate reorganization proceeding pending in Bankruptcy Court through a non-consensual, non-debtor third party release of securities law violations (hereinafter the "Release of Securities Law Violations") approved pursuant to Section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code").[2] Significantly, the Release of Securities Law Violations is contrary to Bankruptcy Code Section 523(a)(19), the important public policy embodied therein, and judicial precedent.  The Second

---

[1]  Citation to pages of Appellants' Appendix are referenced as "App., at A _____."
[2]  For purposes of this Appeal, Appellants do not admit or concede that they are subject to the Release of Securities Law Violations, which issue is the focus of the Enforcement Appeal.

Circuit cautioned that a third party release could be abusive if the releasees conditioned their financial contribution to the bankruptcy estate upon receipt of the release *or* if the release operated as a bankruptcy discharge arranged without a filing and without the safeguards of the Code.   Both of these abuses are present in this matter.   The Bankruptcy Court expressly acknowledged that one of the releasees conditioned his *cooperation* with the corporate restructuring upon receipt of the release and that he would not have *cooperated* without receiving the benefit of the Release of Securities Law Violations.  Moreover, the corporation's officers and directors managed to accomplish through the back door of a corporate bankruptcy case (a discharge of such individuals' debts for securities law violations) that which they could not have accomplished through the front door of an individual bankruptcy case (since individuals are prohibited from discharging their debts for securities law violations pursuant to Bankruptcy Code Section 523(a)(19)).  The Release of Securities Law Violations operated to discharge the liability of the corporation's officers and directors for securities law violations without individual bankruptcy filings and without the safeguards of the Bankruptcy Code.

Because there is no express provision authorizing third party releases in the Bankruptcy Code (other than in the asbestos liability context) and because of the possibility of these abuses, the Second Circuit has held that third party releases should only be approved on rare occasions and only under very narrow circumstances capable of fitting underneath the metaphorical *Metromedia, infra*, umbrella.  The Release of Securities Law Violations approved in this case applies to very broad circumstances which would only be capable of fitting underneath an exceedingly large awning and fails to satisfy the basic criteria approved by the Second Circuit and the courts in the Southern District.   For the reasons set forth hereinbelow, the Reconsideration Order should be reversed and the Release of Securities Law Violations (if it

applies) should be rendered inapplicable to Appellants' securities claims against the corporation's officers and directors.

## BASIS FOR APPELLATE JURISDICTION

This is an appeal of a final order (*i.e.*, the Reconsideration Order) of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered on January 26, 2010 in the Chapter 11 proceeding entitled *In re Charter Communications, Inc., et al.*, Case No. 09-11435 (JPM). The Reconsideration Order denied Appellants' Motion For Limited Rehearing, Limited Reconsideration, And/Or Limited Relief From Order Confirming Debtors' Joint Plan Of Reorganization (the "Reconsideration Motion") (App., at A254 – A274) and found that the Release of Securities Law Violations contained in the Debtors' Plan of Reorganization was appropriate (App., at A739 – A792 and A793 – A824). Appellants filed the Notice of Appeal on February 5, 2010 (App., at A673 – A675). The appellate jurisdiction of the District Court is invoked by 28 U.S.C. § 158(a)(1) which provides that the District Court "shall have jurisdiction to hear appeals from final judgments, orders and decisions … of bankruptcy judges."

## STATEMENT OF ISSUE ON APPEAL

The primary issue in this Appeal is whether the Bankruptcy Court erred in entering the Reconsideration Order and thereby involuntarily extinguishing Appellants' federal securities claims against the corporate debtor's officers and directors pending in Arkansas District Court without actual notice and contrary to Bankruptcy Code Section 523(a)(19), important public policies embodied therein, and judicial precedent.

3

## STANDARD OF APPELLATE REVIEW

The Bankruptcy Court's interpretation of the text of the Plan and the Confirmation Order are conclusions of law reviewed *de novo*. *Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 91 (2d Cir. 2010). The bankruptcy court's findings of fact are reviewed for clear error. *Citibank, N.A. v. Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003); *In re Johns-Manville Corp.*, 340 B.R. 49, 58 (S.D.N.Y. 2006); and Fed. R. Bankr. P. 8013. The bankruptcy court necessarily abuses its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Kalikow*, 602 F.3d at 91 (citation and internal quotation marks omitted). Because the issue on Appeal involves a conclusion of law, the review is *de novo*.

## STATEMENT OF THE CASE

Appellants are Taft Hartley Funds established and maintained to provide retirement benefits to union members and their families. Appellants filed suit against certain officers and directors ("CCI's Officers and Directors") of Charter Communication, Inc. ("CCI") in the Arkansas District Court in order to recoup financial losses resulting from securities law violations. Appellants' right to recoup their losses from CCI's Officers and Directors should have been preserved irrespective of a bankruptcy filing by one or more of CCI's Officers and Directors.[3] This is because Bankruptcy Code Section 523(a)(19) embodies the important public policy of preserving the rights of victims of securities law violations to recoup their losses and prevents the individuals responsible for those losses from filing for bankruptcy and discharging those debts. However, CCI's Officers and Directors made an end run around Bankruptcy Code Section 523(a)(19) and managed to accomplish through the back door of a corporate bankruptcy

---

[3] If one or more of CCI's Officers and Directors had filed a bankruptcy petition, Appellants would have received actual notice of the bankruptcy filing, the Federal Securities Litigation against such individual(s) would have been stayed pursuant to Bankruptcy Code Section 362(a), and Appellants' rights to recoup their losses from such individual(s) would have been preserved pursuant to Bankruptcy Code Section 523(a)(19).

case (obtaining a discharge of their individual liability for securities law violations) that which they could not have accomplished through the front door of an individual bankruptcy case.

On March 27, 2009, CCI filed a bankruptcy petition and a pre-arranged plan of reorganization containing the Release of Securities Law Violations.  Trumpeting its size, the financial wherewithal of its principal, and the negative state of the economy, CCI invited the Bankruptcy Court to approve the Release of Securities Law Violations pursuant to its general equitable powers under Bankruptcy Code Section 105(a).  On November 17, 2009, the Bankruptcy Court entered an Order approving the Release of Securities Law Violations pursuant to Bankruptcy Code Section 105(a) over the objection of several parties in interest and confirming CCI's plan of reorganization.

On November 27, 2009, Appellants filed the Reconsideration Motion in order to obtain an order that the Release of Securities Law Violations was illegal to the extent it was intended to cover the Federal Securities Litigation because it was contrary to Bankruptcy Code Section 523(a)(19), the important public policy embodied therein, and judicial precedent.  On January 26, 2010, the Bankruptcy Court entered the Reconsideration Order (App., at A671 – A672) finding the Release of Securities Law Violations was fully considered and properly approved in the context of the confirmation of CCI's Plan of Reorganization. On February 5, 2010, Appellants filed a Notice of Appeal of the Reconsideration Order (App., at A673 – A675).  The Reconsideration Order should be reversed because the Release of Securities Law Violations is contrary to Bankruptcy Code Section 523(a)(19), important public policy embodied therein, and judicial precedent.

## STATEMENT OF FACTS

Appellants incorporate by reference the Statement of Facts set forth in Appellants' Brief in Support of the Appeal of the Enforcement Motion, as well as any facts included in the Preliminary Statement and Statement of the Case, *supra*.

On March 27, 2009 (the "Petition Date"), CCI filed a petition for relief under Chapter 11 (the "Chapter 11 Proceeding") of the United States Bankruptcy Code and a pre-arranged plan of reorganization. The plan ultimately confirmed by the Court, (and apparently prior drafts as well), contained the following Release of Securities Law Violations and injunction provisions:

> E. Third Party Releases. On the Effective Date and effective as of the Effective Date, *the Holders of Claims and Interests* shall be deemed to provide a full discharge and release to the *Debtor Releasees*[4] and their respective property from any and all Causes of Action, whether known or unknown, whether for tort, contract, *violations of federal or state securities laws* or otherwise, arising from or related in any way to the Debtors, including those in any way related to the Chapter 11 Cases or the Plan . . . .
>
> F.    Injunction.    From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner, any Cause of Action released or to be released pursuant to the Plan or the Confirmation Order.

(the "Release of Securities Law Violations" and "Plan Injunction," respectively).[5] App., at A146 – A147 and A241. (Emphasis supplied). The plan also classified holders of interests in CCI in Class A-6 and provided that they were not entitled to vote to accept or reject the Plan, were deemed to have conclusively rejected the Plan, their interests would be cancelled, released and extinguished upon plan confirmation, and they would not receive a distribution under the Plan. App., at A205.   On March 30, 2009, the Court entered an Order Establishing Certain Notice,

---

[4]    The phrase "Debtor Releasees" is defined in Article 10.D of the Plan as the Debtors and each of their respective members, *officers, directors*, agents, financial advisors, attorneys, employees, partners, affiliates and representatives. (Emphasis supplied).  App., at A240.

[5]    However, certain litigation is expressly excepted from the Release of Securities Law Violations and Plan Injunction provisions as referenced in the Confirmation Order.  App., at A169 - 170, ¶¶ 161 and 162.

Case Management and Administrative Procedures authorizing CCI to limit notice of all "Documents" and matters filed in the Chapter 11 cases to a core group of entities, entities filing a notice of appearance and request for service, *and entities with a particularized interest in the particular relief at issue* (the "Case Management Order").[6] App., at A001- A007.

On May 7, 2009, the Bankruptcy Court entered an order approving CCI's Disclosure Statement and establishing April 17, 2009 as the record date for receiving notice of the confirmation hearing (the "Disclosure Statement Order"). App., at A011, ¶ 7. The Disclosure Statement Order also provided that the deadline for filing objections to the Plan of Reorganization was July 13, 2009 and that the confirmation hearing would commence on July 20, 2009. App., at A017 – A018, ¶ 23. By the time of the confirmation hearing, CCI and CCI's Officers and Directors were aware of the Securities Fraud Litigation (referenced below) and were aware that the Appellants should have received actual notice of the confirmation hearings because they were "entities with a particularized interest in the particular relief at issue" (*i.e.*, the Release of Securities Law Violations contained in the proposed plan of reorganization) in accordance with the Disclosure Statement Order. App., at A829.[7] However, CCI and CCI's Officers and Directors failed to give Appellants actual notice of the confirmation hearings.

On July 31, 2009, Appellants moved for their appointment as Lead Plaintiffs in a securities fraud class action suit originally filed by Herb Lair against CCI executives Paul G. Allen, Eloise Schmitz and Neil Smit ("Allen," "Schmitz," and "Smit," respectively, or collectively "CCI's Officers and Directors") in Arkansas District Court, Case No. 4:09-cv-

---

[6]   The phrase "Document" was defined in the Debtor's Motion for Entry of an Order Establishing Certain Notice, Case Management and Administrative Procedures as including various pleadings, objections, and replies such as notices of motions, notices of hearings, motions, and other requests for relief.

[7]   Specifically, CCI's Form 10-Q for the period ended June 30, 2009 stated that CCI was aware of the Securities Fraud Litigation and that CCI intended to vigorously contest it. Notably, CCI failed to disclose that it had proposed the Release of the Securities Law Violations in the bankruptcy case and that CCI actually intended to extinguish the claims in the Securities Fraud Litigation pursuant to such release.

00405-JLH (the "Securities Fraud Litigation") pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq.*  On August 21, 2009, the Arkansas District Court entered an Order appointing the Appellants as Lead Plaintiffs.  The Securities Fraud Litigation was filed on behalf of those persons (the "Class") who purchased common stock of CCI between October 23, 2006 and February 12, 2009 (the "Class Period").  App., at A825 – A859.  The causes of action in the Securities Fraud Litigation were asserted solely against CCI's Officers and Directors for their violations of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.  It is undisputed that Appellants never asserted a claim against CCI, never named CCI as a defendant in the Securities Fraud Litigation and never filed a proof of claim against CCI in the Chapter 11 Proceeding.

On November 17, 2009, the Bankruptcy Court issued its Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Confirmation Order"), App., at A104 – A175, together with the Opinion on Confirmation of Plan of Reorganization and Adjudication of Related Adversary Proceeding (the "Confirmation Opinion"), App., at A022 – A103.  The Confirmation Order provides that "[t]he Plan contains various provisions that may be construed as discretionary . . . [and] such discretionary provisions . . . are **not** inconsistent with the applicable provisions of the Bankruptcy Code."  App., at A117, ¶ 26.  (Emphasis supplied).  Among the discretionary provisions which purportedly were "not inconsistent with the applicable provisions of the Bankruptcy Code" was the Release of Securities Law Violations.  App., at A123 – A125, ¶¶ 42 – 47.  First, the Confirmation Order labeled the Release of Securities Law Violations as "important to the success of the Plan" and labeled the circumstances surrounding the bankruptcy

case as "unique" and "truly unusual." App., at A123, ¶ 42. Next, and quite significantly, the

Confirmation Order states that the CII Settlement Claim Parties[8] *required* the Release of

Securities Law Violations "*[i]n consideration for entry into the CII Settlement.*" App., at A124,

¶ 44. (Emphasis supplied). The Confirmation Order additionally provides that "[t]he releases

required by the CII Settlement are appropriate and justified because, among other reasons set

forth below, they were essential to the formulation of the Plan *and supported by substantial

consideration.*" App., at A120, ¶ 34. (Emphasis supplied). The Confirmation Order then

identifies the "substantial consideration" provided by the CII Settlement Claim Parties (although

the Release of Securities Law Violations ran in favor of the much broader category of "Debtor

Releasees") in exchange for the Release of Securities Law Violations as follows:

> (a)    forbearance from exercising exchange rights and the maintenance of the existing Holdco structure in order to facilitate the preservation of approximately $2.85 billion of tax attributes with enhanced utilization (with resulting benefits expected by the Debtors of approximately $1.14 billion in future cash savings); and

> (b)    retention of 35% voting power of the Debtor and power to appoint 4 of 11 board members to facilitate savings of several hundred million dollars annually in interest expense through reinstatement of the CCO Credit Facility Claims and other Senior Debt.[9]

App., at A123, ¶ 43.

The Confirmation Order also provides "[t]here is an identity of interest between the Debtors and

the beneficiaries of the [Release of Securities Law Violations] . . . [because they] have the right

to seek indemnity, contribution or other reimbursement from the Debtors with respect to *certain

activities relating to the negotiation and consummation of the Plan.*" App., at A124, ¶ 46. The

---

[8]    The phrase "CII Settlement Claim Party" is defined at Article I.A.61 of the Plan as including Allen and his affiliates. App., at A188.

[9]    The Confirmation Order acknowledges that Allen "is the only individual in existence whose continued participation as a CCI stockholder enables the Debtors to reinstate the Senior Debt." App., at A123, ¶ 43. Accordingly, Schmitz and Smit cannot be deemed to have made this "contribution" of cooperation to the bankruptcy estate.

Confirmation Order finally provides that the Release of Securities Law Violations "is consistent with section 105 . . . other provisions of the Bankruptcy Code, and other applicable law." App., at A126, ¶ 50. Regardless of whether the contribution of cooperation flowing to the bankruptcy estate originated from the CII Settlement Claim Parties or the Debtor Releasees, the Confirmation Opinion very clearly states that it came from *Allen only*. App., at A077. Moreover, the Confirmation Order and the Confirmation Opinion fail to reference any consideration whatsoever originating from, or provided by, Schmitz and Smit in exchange for the Release of Securities Law Violations.

On the flip side, the Confirmation Order states that Allen "***demanded*** and has secured the right to receive substantial compensation ***in exchange for*** his cooperation" from CCI. App., at A030. At footnotes 2 and 20 of the Confirmation Opinion, the Bankruptcy Court states that Allen is to receive aggregate compensation that totals approximately $375 Million and that CCI would have likely been obligated to pay $175 Million of such amount to Allen irrespective of the settlement (the "Consideration Provided by CCI to Allen"). App., at A030, fn. 2 and A071, fn. 20. The Bankruptcy Court also acknowledges that it "questioned why Mr. Allen should be receiving any valuable consideration at all for cooperating with [CCI] and doing things for the benefit of [CCI] that seem to fall into the category of the proper thing to do." App., at A047 – A048.

On November 27, 2009, Appellants filed the Reconsideration Motion.[10] App., at A254 – A274. On December 8, 2009, Appellants obtained a stay of the Securities Fraud Litigation in light of the Reconsideration Motion. App., at A860 – A861. On December 10, 2009, CCI, the Creditors' Committee and Allen filed objections to the Reconsideration Motion. App., at A360 –

---

[10] It should be noted again that while the Reconsideration Motion challenged the propriety of the Release of Securities Law Violations generally, at no time did Appellants concede that the Release of Securities Law Violations, by definition, applied to themselves and all members of the putative Class.

A521, A275 – A287 and A288 – A359, respectively.  On December 17, 2009, the Bankruptcy

Court conducted a hearing (the "Reconsideration Hearing") and stated as follows:

> For the reasons stated[,] I am denying the motion brought by the Genovese firm
> on behalf of the named lead plaintiffs in the action currently pending in the
> Eastern District of Arkansas.  I leave it to the District Court in Arkansas to
> determine the actual impact of the plan releases upon the causes of action that
> have been asserted there.  This decision in no way indicates how a district court
> should rule with respect to the scope of that release, however, I recognize that
> confirmation orders such as this one typically are entitled to res judicata treatment
> and respect.

App., at A790.  On January 26, 2010, the Bankruptcy Court entered the Reconsideration Order.

App., at A671 – A672.  Appellants filed a Notice of Appeal of the Reconsideration Order on

February 5, 2010 (App., at A673 – A675) and filed their Statement of Issues to be Presented on

Appeal and Designation of Contents of the Record on Appeal on February 19, 2010.  App., at

A693 – A705.  On March 5, 2010, CCI filed its Counter-Designation of Additional Items to be

Included in the Record on the Appeal.  App., at A709 – A719.  The Reconsideration Appeal has

been assigned to the Honorable George B. Daniels, U.S.D.J.

While seemingly leaving the door open for the Arkansas District Court to "determine the

actual impact [and the scope] of the [Release of Securities Law Violations] upon the causes of

action that have been asserted [in the Securities Fraud Litigation]," the Bankruptcy Court

subsequently slammed that door shut by granting CCI's motion to enforce the Plan Injunction

(the "Enforcement Decision and Order").  App., at A676 – A688.  Appellants have separately

appealed the Enforcement Order and such appeal is not the subject of this brief.

Appellants respectfully submit that the Reconsideration Order should be reversed because

the Release of Securities Law Violations is contrary to Bankruptcy Code Section 523(a)(19),

important public policy embodied therein, and judicial precedent as it relates to the Securities

Fraud Litigation.

## **ARGUMENT**

THE BANKRUPTCY COURT ERRED IN ENTERING THE
RECONSIDERATION ORDER TO THE EXTENT THE
RELEASE OF SECURITIES LAW VIOLATIONS
UNLAWFULLY EXTINGUISHED APPELLANTS'
SECURITIES FRAUD LITIGATION AGAINST CCI'S
OFFICERS AND DIRECTORS CONTRARY TO
BANKRUPTCY CODE SECTION 523(A)(19), IMPORTANT
PUBLIC POLICIES EMBODIED THEREIN, AND JUDICIAL
PRECEDENT.

A.    The Release of Securities Law Violations is prohibited by Bankruptcy Code
Section 523(a)(19).

In approving the Release of Securities Law Violations pursuant to Bankruptcy Code

Section 105(a), the Bankruptcy Court failed to give appropriate effect to Bankruptcy Code

Section 523(a)(19).

In *Louise M. Smith, IRA v. Gibbons (In re Gibbons)*, 289 B.R. 588, 590-91 (Bankr.

S.D.N.Y. 2003), aff'd, 311 B.R. 402 (S.D.N.Y. 2004), *aff'd*, 155 Fed. Appx. 534 (2d Cir. 2005),

the Bankruptcy Court held that an arbitral award against an officer of a brokerage company for

securities law violations was non-dischargeable under Bankruptcy Code Section 523(a)(19). In

so holding, the Bankruptcy Court stated as follows:

> Section 523(a)(19) was adopted as part of the Sarbanes-Oxley Act, which has
> been described as a means to address systemic and structural weaknesses . . .
> revealed in . . . a breakdown in corporate financial and broker-dealer
> responsibility. Its stated purpose is to protect investors by improving the accuracy
> and reliability of corporate disclosures made pursuant to the securities laws, and
> for other purposes.  Pub. L. No. 107-204, 116 Stat. 745 (2002).  The various
> provisions of the Act institute major changes in accounting practices, the
> oversight of companies, corporate governance and executive responsibility. Title
> VIII of the Sarbanes-Oxley Act of 2002 is entitled "The Corporate and Criminal
> Fraud Accountability Act of 2002" (the "Accountability Act").    The
> Accountability Act was authored by Senate Judiciary Chairman Patrick Leahy,
> and introduced by Senator Leahy and others on March 12, 2002. S. Rep. No. 107-
> 146, at 2 (2002). The purpose of the Accountability Act is:

"To provide for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations, *to disallow debts incurred in violation of securities fraud laws from being discharged in bankruptcy*, to protect whistleblowers who report fraud against retaliation by their employers, and for other purposes." (emphasis added).

S. Rep. No. 107-146, at 2 (2002). Section 803 of the Accountability Act, titled "Debts nondischargeable if incurred in violation of securities fraud laws," added subsection (19) to the exceptions to discharge enumerated in § 523(a) of the Bankruptcy Code. It provides that:

[(a) a discharge under section *727, 1141*, . . . does not discharge an individual debtor from any debt-]
(19) that-
(A)  is for-
(i)   the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
(ii)  common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
(B)   that results [, *before, on, or after the date on which the petition was filed,[11]*] from-
(i)   any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
(ii)  any settlement agreement entered into by the debtor; or
(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

*Id*. at 591 – 592. Although the statute requires a debt to be based upon a securities law violation and to be fixed in order to be rendered non-dischargeable, it does not give individuals or corporate debtors the opportunity to race to the bankruptcy court in order to win a discharge or confirmation of a plan of reorganization containing releases tantamount to a discharge before individual liability is fixed in the securities case. To the contrary, Congress intended to preserve the rights of securities plaintiffs to recoup their losses resulting from securities law violations by

---

[11]     The italicized terms in the bracket were added to Bankruptcy Code Section 523(a)(19) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, § 1404(a), 119 Stat. 23 ("BAPCPA").

individual officers and directors irrespective of a bankruptcy filing by an individual or a corporate debtor.  Any interpretation to the contrary would improperly keep open the "loophole" Congress intended to close by adding Section 523(a)(19) to the Bankruptcy Code.

In *Gibbons*, the Bankruptcy Court noted that Bankruptcy Code Section 523(a)(19) was intended by Congress to close the "loophole in the law to help defrauded investors recoup their losses" and that such provision should be applied "as broadly as possible in pending bankruptcy cases."  *Gibbons*, 289 B.R. at 592 – 593.  The Bankruptcy Court then quoted the following statement by Senator Leahy as part of his section-by-section analysis of the bill:

> This provision [§ 523(a)(19)] is meant to prevent wrongdoers from using the bankruptcy laws as a shield and to allow defrauded investors to recover as much as possible.  ***To the maximum extent possible, this provision should be applied to existing bankruptcies***.  The provision applies to all judgment and settlements arising from state and federal securities law violations entered in the future regardless of when the case was filed.

*Id.* at 593.  (Citation omitted).[12]  The Bankruptcy Court also noted that "[t]he section-by-section analysis was adopted as legislative history for the Accountability Act 'in order to provide guidance in the legal interpretation of these provisions of Title VIII of H.R. 2673.'"

The broad reach of Bankruptcy Code Section 523(a)(19) is also evidenced by the case *Oklahoma Department of Securities v. Mathews*, 423 B.R. 684 (W.D. Okla. 2010).  In *Mathews*, the district court affirmed the entry of summary judgment in favor of the plaintiff and thereby held that the debt of an innocent investor in a Ponzi scheme resulting from the receipt of "false profits" could not be discharged by virtue of Bankruptcy Code Section 523(a)(19).  In so holding, the district court rejected appellants' argument that Bankruptcy Code Section 523(a)(19) was limited to judgments resulting from the debtor's direct violation of the state securities laws

---

[12]     The Bankruptcy Court stated that the last quoted sentence by Senator Leahy made it evident that "the statute was also intended to apply where the securities fraud action had been commenced prior to adoption of the statute but was still pending on the date of enactment." *Id.* at fn. 8.

and that such provisions were not applicable to innocent investors in a Ponzi scheme.  *Id*. at 688
– 689.  The district court stated that: the "§ 523(a)(19) exception has an express purpose and is
broadly construed to achieve that purpose.  The exception is designed to be broadly applied
because the purpose of that exception is to protect investors and hold accountable those who
violate securities laws."  *Id*. at 689.  (Citation omitted).  In light of the public policy underlying
Bankruptcy Code Section 523(a)(19) and its broad applicability, the District Court affirmed the
entry of summary judgment against the innocent investor determining that the debt for securities
law violations was not dischargeable in the innocent investor's bankruptcy case.  Accord *S.E.C.
v. Sherman*, 406 B.R. 883, 887 (C.D. Cal. 2009) (rejecting construction of the statute which
would have permitted avoidance of debts for securities law violations by the mere filing of a
bankruptcy petition).

The preservation of a defrauded investor's ability to recoup his losses by preventing those
individuals who violate securities laws from discharging those debts in bankruptcy is the
important public policy embodied in Bankruptcy Code Section 523(a)(19).   In adding
Bankruptcy Code Section 523(a)(19), Congress sought to remedy abuses and to protect victims
of securities fraud to the greatest extent possible.  Permitting CCI's Officers and Directors to
accomplish through the back door of a corporate bankruptcy (obtaining a discharge of their
individual liability for securities law violations) that which they could not have accomplished
through the front door of an individual bankruptcy case by virtue of the Release of Securities
Law Violations, violates the letter and spirit of Bankruptcy Code Section 523(a)(19).  Because
this is exactly what has occurred, Appellants respectfully submit that the Reconsideration Order
should be reversed and the Release of Securities Law Violations should be rendered inapplicable
to the Securities Fraud Litigation.

B.     The Release of Securities Law Violations is invalid because it contravenes judicial precedent and is not supported by sufficient factual findings and/or evidence.

The Release of Securities Law Violations is invalid because it contravenes judicial precedent and is not supported by sufficient factual findings and/or evidence.  First, the two abuses identified by the Second Circuit in *Metromedia, infra,* and *Karta Corp., infra*, are present with respect to the Release of Securities Law Violations: (a) in form it is a release but, in operation, it operates as a discharge in favor of CCI's Officers and Directors without a filing and without the safeguards of the Bankruptcy Code; and (b) Allen conditioned his contribution to cooperation to the bankruptcy estate upon receipt of the Release of Securities Law Violations. Secondly, Schmitz, Smit, and each of the other officers and directors of CCI (with the possible exception of Allen) failed to provide *any* consideration whatsoever to the bankruptcy estate (and certainly no consideration was provided to defrauded investors who received nothing under the confirmed Plan of Reorganization) in exchange for the Release of Securities Law Violations and, as such, they are not entitled to the benefit of such release, at least to the extent it impacts the Securities Fraud Litigation.   It is also questionable whether Allen provided sufficient consideration to the bankruptcy estate in exchange for the Release of Securities Law Violations because he failed to make *any financial contribution* whatsoever to the bankruptcy estate and because Allen extracted approximately $375 Million *from* CCI.  Thirdly, the factual findings (and evidence) concerning the alleged identity between CCI and CCI's Officers and Directors was woefully insufficient as a matter of law.  No evidence was offered as to: (a) the existence, nature and extent of indemnification obligations between CCI and CCI's Officers and Directors; (b) the economic impact the alleged indemnity obligations would have on CCI's bankruptcy estate; (c) the existence, nature and extent of directors' and officers' insurance coverage which

would limit, if not eliminate, any indemnity claims; and (d) whether such indemnification would be statutorily subordinated under Bankruptcy Code Section 510(b) and entitled to no recovery under CCI'S Plan of Reorganization.   Fourthly, the circumstances surrounding CCI's seven month pre-arranged bankruptcy proceeding and the "gives" and "gets" involved were not truly "unique" in comparison to other reorganization proceedings.   Lastly, the Release of Securities Law Violations was not rendered valid merely because the proceedings were labeled as "unique," "rare," "essential," or "important" and not because the parties chose to make them an element of their deal.   For these reasons, the Release of Securities Law Violations is invalid because it contravenes the following judicial precedent.

The Bankruptcy Court premised its approval of the Release of Securities Law Violations upon Bankruptcy Code Section 105(a).   Bankruptcy Code Section 105(a) provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."   Recently, the Second Circuit reemphasized the limited reach of Section 105 by stating as follows:

> We have long recognized that section 105(a) limits the bankruptcy court's equitable powers, which must and can only be exercised within the confines of the Bankruptcy Code.   *Section 105 does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity. . . . We must hold, however, that the equitable power conferred on a bankruptcy court by 11 U.S.C. § 105 is the power to exercise equity in carrying out the provisions of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing.*   This limitation suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective.   Further, the Supreme Court has cautioned that because of their very potency, inherent powers must be exercised with restraint and discretion.

*Solow*, 602 F.3d at 97 (internal quotation marks and citations omitted).   The case *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136,

141 (2d Cir. 2005) involved a plan of reorganization containing a non-debtor, third party release in favor of the Kluge Trust.[13]  The Kluge Trust (a) forgave approximately $150 million in unsecured claims against the debtor; (b) converted $15.7 million in senior secured claims to equity in the reorganized debtor; (c) invested approximately $12.1 million in the reorganized debtor; and (d) purchased up to $25 million of unsold common stock in the reorganized debtors' planned stock offering (the "Kluge Consideration").  *Id*.  In exchange, the Kluge Trust received (a) 10.8% of the reorganized debtor's common stock and (b) the "Kluge Comprehensive Release," which provided as follows:

> the Kluge Trust and each of the Kluge Insiders shall receive a full and complete release, waiver and discharge from . . . any holder of a claim of any nature . . . of any and all claims, obligations, rights, causes of action and liabilities arising out of or in connection with any matter related to [the debtor] or one or more subsidiaries . . . based in whole or in part upon any act or omission or transaction taking place on or before the Effective Date

*Id*.  Appellants argued that the release was not authorized by the Bankruptcy Code or supported by the findings of the bankruptcy court.  *Id*.  Citing to *S.E.C. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992), the Second Circuit noted that it had previously held that "[i]n bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an *important part* in the debtor's reorganization plan."[14]   (Emphasis supplied).  *Id*.  The Second Circuit then went on to state as follows:

> While none of our cases explains when a nondebtor release is "important" to a debtor's plan, it is clear that such a release is proper *only in rare cases*.  *See, e.g., Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*,

---

[13]   In *Metromedia*, the Second Circuit stated it had jurisdiction to rule on the merits of the appeal notwithstanding arguments by the appellee considering the proper remedy.  *Metromedia*, 416 F.3d at 144.

[14]   In *Drexel*, the debtor paid $150 Million into a settlement fund established for the benefit of two classes of victims of its illegal transactions in "junk bonds" and provided for the pooling of recoveries against the debtor's former officers and directors for the benefit of the debtor and one class of victims (such claims having been subsequently settled for $1.3 Billion).  *Id*. at 288 - 289. Thus, unlike here, defrauded investors in *Drexel* received a direct benefit by virtue of the settlement.

280 F.3d 648, 657-58 (6th Cir. 2002) ("[S]uch an injunction is a dramatic measure to be used cautiously . . . ."); *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 212-13 (3d Cir. 2000) (recognizing that nondebtor releases have been approved only in "extraordinary cases"). The Ninth and Tenth Circuits have held that nondebtor releases are *prohibited* by the Code, except in the asbestos context.  *See Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401-02 n. 6 (9th Cir. 1995); *Landsing Diversified Props.-II v. First Nat'l Bank and Trust Co. of Tulsa (In re W. Real Estate Fund, Inc.)*, 922 F.2d 592, 600-02 (10th Cir. 1990) (per curiam).

At least two considerations justify the reluctance to approve nondebtor releases. First, the only explicit authorization in the Code for nondebtor releases is 11 U.S.C. § 524(g), which authorizes releases in asbestos cases when specified conditions are satisfied, including the creation of a trust to satisfy future claims. True, 11 U.S.C. § 105(a) authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Code; but section 105(a) does not allow the bankruptcy court to create substantive rights that are otherwise unavailable under applicable law.  Any power that a judge enjoys under § 105 must derive ultimately from some other provision of the Bankruptcy Code.  Second, a nondebtor release is a device that lends itself to abuse.  By it, a nondebtor can shield itself from liability to third parties.  In form, it is a release; in effect, it may operate as a bankruptcy discharge arranged without a filing and without the safeguards of the Code.  The potential for abuse is heightened when releases afford blanket immunity.  Here, the releases protect against any claims relating to the debtor, whether for tort, fraud, contract, *violations of federal or state securities laws*, or otherwise, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured.

*Id.* at 141 – 142 (emphasis added, intervening citations and quotation marks omitted).   In evaluating the propriety of the releases at issue, the Second Circuit stated that "[c]ourts have approved nondebtor releases when: [1] the estate received substantial consideration,[15] e.g., *SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992); [2] the enjoined claims were 'channeled' to a settlement fund rather than extinguished, *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837

---

[15]  The Second Circuit did not define the phrase "substantial consideration" in *Metromedia* but, stated that "a nondebtor release is not adequately supported by consideration simply because the nondebtor contributed something to the reorganization and the enjoined creditor took something out."  *Metromedia*, 416 F.3d at 143.  Similarly, in *Karta*, the District Court has held that "the mere fact of financial contribution by a non-debtor cannot be enough to trigger the right to a *Metromedia/Drexel* release of nondebtor claims."  *Karta*, infra at 55.

F.2d 89, 93-94 (2d Cir. 1988); *Menard-Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694, 701 (4th Cir. 1989); [3] the enjoined claims would indirectly impact the debtor's reorganization 'by way of indemnity or contribution,' *id.*; and [4] the plan otherwise provided for the full payment of the enjoined claims, *id. Id.* at 142. Additionally, [n]ondebtor releases may also be tolerated if the affected creditors consent.[16] *See In re Specialty Equip. Cos.*, 3 F.3d 1043, 1047 (7th Cir. 1993)." *Metromedia*, 416 F.3d at 142.

According to the Second Circuit, however, "this is not a matter of factors and prongs" and "[n]o case has tolerated nondebtor releases absent the finding of circumstances that may be characterized as unique." *Id.* (Citations omitted). Since there was no finding (or evidence presented) that the Kluge Comprehensive Release was *itself* "important to the Plan" and no inquiry into whether the breadth of the release was "necessary to the Plan"), the Second Circuit concluded the release should not have been approved by the Bankruptcy Court. *Id.* at 143. The *Metromedia* court held that "[a] nondebtor release in a plan of reorganization should not be approved absent the finding that truly unusual circumstances render the release terms important to success of the plan, focusing on the considerations discussed above, *see supra* at 142 – 143. *Id.*

The Bankruptcy Court's opinion in *In re Adelphia Communications Corp.*, 368 B.R. 140 (Bankr. S.D.N.Y. 2007) has many parallels to this matter and supports the reversal of the Reconsideration Order. In *Adelphia*, the Bankruptcy Court stated that "[t]he tenor of the *Metromedia* decision, as much as its plain language, . . . requires the bankruptcy community in this Circuit to be much more circumspect in providing for third party releases than it used to be."

---

[16] In the matter *sub judice*, only circumstances (1) and (3) referenced in *Metromedia* could potentially be applicable. The enjoined claims were not channeled to a settlement fund, the plan did not provide for their full payment, and Appellants were not entitled to vote on the plan but, rather, were deemed to reject the plan.

*Id.* at 267.  In analyzing whether "unique" factors justifying a third party release are present, the

Bankruptcy Court stated that the delivery of beneficial services to the bankruptcy case may not

be unique because the service providers receive interest and fees for their services.[17]  *Id.* at 267 –

268.  Moreover, service providers entitled to indemnification from the debtor may receive the

benefit of third party releases "[t]o the extent" the release is congruent with the indemnification

obligations and the debtor would be liable for any liability imposed on such persons.  *Id.* at 267.

The Bankruptcy Court also cited to the Seventh Circuit's decision in *In re Specialty Equipment*

*Companies, Inc.,* 3 F.3d 1043, 1045 (7th Cir. 1993), with approval for the holding that

"[c]reditors who abstained or voted against the Plan [were] deemed not to have granted the

releases."  *Adelphia Communications*, 368 B.R. at 268 fn. 309.  After articulating these limited

circumstances in which third party releases *may* pass muster under Second Circuit precedent, the

Bankruptcy Court stated as follows:

> But beyond that, I cannot approve the third-party releases or exculpation here.
> Other than the Buyers [of the debtor's assets for $17.5 Billion], nobody in this
> case made a substantial contribution of assets, or otherwise provided
> consideration to the estate.  The "give-ups" that parties made were of rights to
> recover that were subject to fair debate.  In the case of creditors, even those that
> are Settling Parties, they were merely striking the kinds of deals with respect to
> their shares of the pie that chapter 11 contemplates.  I don't doubt that in this case
> the Settling Parties engaged, as the Plan Proponents argue, in 'tireless efforts' to
> come together to work out a global compromise aimed at resolving these cases.
> But that's not unique.  It's something creditors have to do in every chapter 11
> case, at the risk of destroying themselves (or their recoveries in the case) with
> their own quests for incremental recoveries.
>
> Nor can I accept the notion that the releases pass muster under *Metromedia*
> because the Settling Parties elected to make them an element of their deal.  First,
> of course, they provided that their releases and exculpation would remain only to

---

[17]    Apart from the Contributions by CCI to Allen in the approximate amount of $375 Million, CCI's counsel
argued at the hearing on the Reconsideration Motion that CCI's other officers and directors had provided
substantial consideration to the bankruptcy estate in exchange for the Release of Securities Law Violations
consisting of their continued employment with CCI during the reorganization proceeding.  App., at A669,
lines 20 – 25 and A670, lines 1 – 5.  When Appellants' counsel suggested that CCI compensated those
other officers and directors for their continued employment, CCI's counsel failed to state or to demonstrate
otherwise.  App., at A675, lines 3 – 25.

the extent permissible under applicable law-fully recognizing, it appears, that their enforceability was at least debatable. But even if they had not, I could not approve them. It would set the law on its head if parties could get around it by making a third party release a *sine qua non* of their deal, to establish a foundation for an argument that the injunction is essential to the reorganization, or even an 'important part' of the reorganization.

*Id*. at 268 – 269.

In *Cartalemi v. Karta Corp. (In re Karta Corp.)*, 342 B.R. 45, 54 - 55 (S.D.N.Y. 2006), the District Court noted that the released parties agreed to make substantial financial contributions to the bankruptcy estate *on the condition* that they are released from creditors' claims and that the plan could not be funded in the absence of such contributions.[18] (Emphasis in the original). However, the Court stated that "it is precisely this conditioning of financial participation by non-debtors on releases that is subject to the sort of abuse foreseen by the Second Circuit in *Metromedia*." *Id*. at 55. The Court explained:

> Anyone can devise a plan that involves contributions from non-debtors who (not surprisingly) would condition their participation on being shielded from *their* creditors. And just as every unhappy family is unhappy in its own way (Leo Tolstoy, *Anna Karenina*), every multi-debtor corporate bankruptcy can come up with some aspect of its situation that seems to it, and to its creditors, to be "unique." So it would be all too easy to bring many cases in under what the Second Circuit has said should be the *very small Metromedia umbrella* which would make a plan facet that is supposed to be an exception swallow the rule against non-debtor releases.

*Id*. (Emphasis supplied). In directing bankruptcy court's to exercise restraint in approving nondebtor releases, the District Court stated that "the challenge for a court is to parse the facts of the case before it to see whether *a significant non-debtor __financial contribution__ plus other unusual factors* render a situation so "unique" that non-debtor releases are appropriate." *Id*. (Emphasis supplied). The Court also stated that "[a] necessary corollary of *Metromedia* must be that the releases offered to the Non-Debtors bear a reasonable relationship to the protection of

---

[18] The contributions included cash, personal guarantees, and a waiver of pre and post-petition claims against the debtor. *Id*. at 54.

the estate and go no further than necessary to protect those interests." *Id.* at 57.  Finding the

release at issue in *Karta* to be overly broad, the District Court modified the confirmation order to

limit the release "to all claims relating to the operation and management of the carting/recycling

business operated by Debtors and their affiliates. . . ." *Id.* at 59.

The case *Rosenberg v. XO Communications, Inc. (In re XO Communications, Inc.)*, 330

B.R. 394 (Bankr. S.D.N.Y. 2005) is also instructive as it demonstrates a situation, unlike the

present case, where the plaintiff received actual notices of bankruptcy proceedings but, where,

the release was invalidated in any event due to the failure of the defendants to make a substantial

contribution to the bankruptcy estate.   Specifically, the Bankruptcy Court in *Rosenberg*

determined that a shareholder's short-swing trading suit in District Court against Eagle River

Investments, LLC and Craig McCaw ("Eagle River" and "McCaw," respectively) was not

released by a plan confirmation order and granted summary judgment to the shareholder.  On

August 29, 2000, the shareholder commenced the suit in the District Court of Delaware pursuant

to Rule 16(b) of the Securities Exchange Act of 1934 against Eagle River and McCaw as

statutory insiders and against the debtor as a nominal defendant that had issued the securities (the

"Delaware District Court Shareholder Suit").[19]  *Id.* at 400.  On June 17, 2002, the debtor filed its

Chapter 11 bankruptcy petition.  *Id.* at 407.  On June 21, 2002, plaintiff received notice of the

commencement of the debtor's bankruptcy case and copies of the first amended plan of

reorganization and disclosure statement.  *Id.*    On July 22, 2002, the debtor filed a Third

Amended Plan of Reorganization and Disclosure Statement which failed to reference the

Delaware District Court Shareholder Suit.[20]  *Id.* at 410.  On or about July 26, 2002, the plaintiff

---

[19]     Eagle River and McCaw were alleged to be statutory insiders because they owned more than 10 percent of
         the debtor's common stock and/or because McCaw served as a director of the debtor. *Id.* at 400 – 401.
[20]     The Plan also did not require Eagle River or McCaw to contribute any capital to the debtors' bankruptcy
         estate. *Id.* at 411.

in the Delaware District Court Shareholder Suit received notice of the approval of the Disclosure Statement and notice of the Plan's confirmation hearing date. *Id*. On August 29, 2002, the debtor filed a Suggestion of Bankruptcy in the Delaware District Court Shareholder Suit contending that the action was stayed by virtue of the corporate bankruptcy filing pursuant to Bankruptcy Code Section 362(a). *Id*. The debtor's plan of reorganization was confirmed on November 15, 2002 and became effective on January 16, 2003. *Id*. The confirmation order approved the release and injunction provisions proposed by the debtor and provided, in pertinent part, as follows:

> [E]ach non-debtor party that will benefit from the Plan Releases, waivers of claims and Plan Injunctions shares an identity of interest with the Debtor and has contributed substantial assets to the Debtor's reorganization, which assets will provide for certain [d]istributions that would not otherwise be available but for the contribution made by such nondebtor parties. Such releases, waivers and injunctions are essential to such reorganization and one of the impacted classes, Class 1 . . . has voted to accept its proposed treatment under the Plan.

*Id*. at 413 – 414.

On May 9, 2003, the plaintiff in the Delaware District Court Shareholder Suit filed an adversary complaint seeking (*inter alia*) a declaratory judgment that the confirmed plan did not release Eagle River or McCaw from his Section 16(b) claims because such parties failed to provide consideration to the debtor's bankruptcy estate and the release of such claims was barred by Section 29(a) of the Securities Exchange Act. *Id*. at 416. On December 1, 2003, plaintiff filed a motion for summary judgment on his declaratory judgment claim. *Id*. at 417. In opposing plaintiff's motion for summary judgment, the defendants argued (as the Appellees did before the Bankruptcy Court) that:

> Plaintiff had due notice of the Plan Releases prior to Plan confirmation and could have or should have objected to the releases before confirmation, but neglected to object to the releases. Plaintiff is [therefore] precluded from collaterally attacking the releases six months after confirmation of the Stand-Alone Plan. Instead, . . .

> Plaintiff is now bound by the terms of the Confirmation Order, where entry of the order is an event similar to entry of a final judgment in ordinary civil litigation and, once the Plan has been confirmed, it binds the Debtor and all of its creditors to its provisions, and it has preclusive effect, including precluding all post-confirmation litigation that is subject to the Plan Injunctions in favor of the Debtor's officers and directors.

*Id.* at 435. Because McCaw's and Eagle River's failure to *directly* provide any capital or pay any consideration to the debtor's bankruptcy estate was contrary to the factual finding "that each of the nondebtor parties that will benefit from the Plan Releases . . . has contributed substantial assets to the Debtor's reorganization," the bankruptcy court concluded that a release of their liability in the Delaware District Court Shareholder Suit was not proper. *Id.* at 438 - 440.

Appellant respectfully submits that the foregoing authorities demonstrate that the Reconsideration Order should be reversed and the Release of Securities Law Violations should be rendered inapplicable to the Securities Fraud Litigation.

## CONCLUSION

Based on the foregoing, Appellants respectfully request entry of an order (i) reversing the Reconsideration Order; (ii) determining that the Release of Securities Law Violations should be rendered inapplicable to the Securities Fraud Litigation; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: August 11, 2010
     Miami, Florida

ROBBINS GELLER
RUDMAN & DOWD LLP
Stuart A. Davidson, Esq.
Cullin A. O'Brien, Esq.
David J. George, Esq.
Robert J. Robbins, Esq.
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: (561) 750-3000
Telephone: (561) 750-3364

Respectfully submitted,

GENOVESE, JOBLOVE & BATTISTA, P.A.

By:/s/ Robert F. Elgidely
     Robert F. Elgidely, Esq. (RE-0512)
     John H. Genovese, Esq.
Bank of America Tower at International Place
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Telecopier: (305) 349-2310
*Attorneys for Appellants*